**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 1 0 2018
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on May 10, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94605-1 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JAMEEL PADILLA, | ) | |
| | ) | Filed  MAY 1 0 2018 |
| Petitioner. | ) | |
| | ) | |
| _____ | ) | |

GONZÁLEZ, J.—Jameel Padilla was convicted for communicating with a minor for immoral purposes. At issue here is Padilla's community custody condition prohibiting him from "possess[ing] or access[ing] pornographic materials, as directed by his supervising Community Corrections Officer" (CCO). Clerk's Papers (CP) at 37. Padilla argues that the condition and its accompanying definition of "pornographic materials" are unconstitutionally vague.

Although the condition includes a definition of "pornographic materials," the definition itself is vague and overbroad. A condition cannot be saved from a vagueness challenge merely because it contains a definition when that definition itself suffers the same weakness. Moreover, an overbroad definition does not sufficiently put the offender on notice of what materials are prohibited and subjects him to possible arbitrary enforcement. We therefore reverse the Court of Appeals' decision upholding the condition and remand to the trial court for further definition of the term "pornographic materials" following a determination of whether the restriction is narrowly tailored based on Padilla's conviction.

## FACTS

K.M.,[1] a nine-year-old living in California, received a message on her Facebook page. At the time, her profile picture showed her at eight-and-a-half years old. The message, sent from "Jim Wilcox," included sexually explicit texts. Originally, K.M. thought these messages were from a family friend, but quickly realized she was mistaken.

A relevant portion of the conversation includes:

[WILCOX]: "are you alone?" . . . .
[K.M.]: "ya y?" . . . .
[WILCOX]: "cause im jerking off to you. what are you wearing." . . . .
[WILCOX]: "you are so pretty. my cock is still hard for you." . . . .

---

[1] We use K.M.'s initials to protect her identity and to maintain consistency with the Court of Appeals' opinion and the parties' briefing.

2

> [K.M.]: "shut up I am 9!!!!!!!!!!!!!" . . . .
> [WILCOX]: "suck it" . . . .
> [K.M.]: "no u r gross I am 9 so back off" . . . .

CP at 113-14. Concerned and confused, K.M. blocked "Wilcox" and told her father about the conversation. K.M.'s father reported the messages to California law enforcement and provided screenshots of the conversation. Investigating officers discovered the Internet protocol (IP) address for the computer used to access the "Jim Wilcox" Facebook account was associated with Padilla, who lived in Everett, Washington. At the time, Padilla was 35 years old.

Everett police seized Padilla's computer pursuant to a valid search warrant. A search of the computer revealed Padilla's various Facebook aliases, including the account of "Jim Wilcox." Initially, Padilla did not admit or deny that he used the "Wilcox" account, but he did admit to engaging in similar conversations via Facebook. A forensic evaluation of Padilla's computer also revealed that Padilla was logged on every time K.M. received a message from the "Wilcox" account. Although officers were not able to find the chats with K.M. on Padilla's computer, they had enough evidence to link Padilla to the communications, including identically phrased messages to other minors.

Padilla was charged and convicted of communication with a minor for immoral purposes.[2] The court sentenced him to 75 days of confinement and 12 months of community custody, imposing multiple conditions. Here, Padilla challenges only the condition prohibiting his possession and access to pornographic materials, as directed by his CCO. The term "pornographic material" was defined as "images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts." CP at 37.

On appeal, Padilla challenged his conviction and both community custody conditions. The State disputed Padilla's challenge to the pornography condition. The court affirmed Padilla's conviction, upheld the pornography condition, and remanded to strike the other concededly vague condition.[3] *State v. Padilla*, No. 73902-6-1, slip op. at 10 (Wash. Ct. App. Apr. 24, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/739026.pdf. Padilla sought review here, claiming the charging information omitted an essential element of crime and challenging the "pornographic materials" condition as vague. We granted review only as to the sentencing condition. *State v. Padilla*, 189 Wn.2d 1023, 407 P.3d 1134 (2017).

---

[2] The State also charged him with multiple counts of possessing child pornography, but the communication with a minor charge was severed for trial.

[3] The condition prohibited Padilla from frequenting areas where minors were known to congregate. On appeal, the State conceded that this condition was unconstitutionally vague.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

Conditions of community custody may be challenged for vagueness for the first time on appeal, and where the challenge involves a legal question that can be resolved on the existing record, the challenge may be addressed before any attempted enforcement of the condition. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). This court reviews community custody conditions for abuse of discretion, and will reverse them only if they are "'manifestly unreasonable.'" *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010)). A trial court abuses its discretion if it imposes an unconstitutional condition. *Id.* Here, Padilla raises a preenforcement vagueness challenge to his community custody condition prohibiting him from possessing or accessing pornography.

A legal prohibition, such as a community custody condition, is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement. *Bahl*, 164 Wn.2d at 752-53 (citing *City of Spokane v. Douglass*, 115 Wn.2d 17, 178, 795 P.2d 693 (1990)). But "'a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete

*State v. Padilla*, No. 94605-1

certainty the exact point at which his actions would be classified as prohibited conduct.'" *Sanchez Valencia*, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting *State v. Sanchez-Valencia*, 148 Wn. App. 302, 321, 198 P.3d 1065, *rev'd*, 169 Wn.2d 782 (2009)). Furthermore, a vague condition infringing on protected First Amendment speech can chill the exercise of those protected freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); U.S. CONST. amend. 1. A regulation implicating First Amendment speech must be narrowly tailored to further the State's legitimate interest. *Grayned*, 408 U.S. at 117.[4] Accordingly, a restriction implicating First Amendment rights demands a greater degree of specificity and must be reasonably necessary to accomplish the essential needs of the state and public order. *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)).

1. Padilla's community custody condition prohibiting access and possession of "pornographic materials" is unconstitutionally vague

As mentioned earlier, Padilla challenges the condition prohibiting his access and possession of pornographic materials as unconstitutionally vague. We agree.

---

[4] *See also Packingham v. North Carolina*, 582 U.S. __, 137 S. Ct. 1730, 1736, 198 L. Ed. 2d 273 (2017); *McCullen v. Coakley*, 573 U.S. __, 134 S. Ct. 2518, 2534, 189 L. Ed. 2d 502 (2014); *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 438, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963); *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960); *De Jonge v. Oregon*, 299 U.S. 353, 364-65, 57 S. Ct. 255, 81 L. Ed. 278 (1937).

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In *Bahl*, our court held that a similarly worded condition was unconstitutionally vague. 164 Wn.2d at 758. There, Eric Bahl was convicted of second degree rape and first degree burglary. *Id.* at 743. In addition to prison time, the court imposed a mandatory life term of community custody on the rape charge. One of the community custody conditions prohibited Bahl from "'possess[ing] or access[ing] pornographic materials, as directed by the supervising [CCO].'" *Id.* Because the condition granted sole authority to Bahl's CCO in determining what material was prohibited, this court found the condition did not sufficiently provide Bahl with notice of which materials were prohibited or provide ascertainable enforcement standards. *Id.* at 758.

Similar to *Bahl*, the plain language of Padilla's pornography condition is vague. However, unlike Bahl's, Padilla's condition includes a definition of the term "pornographic materials" as "images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts." CP at 37. Whether the definition of the term "pornographic materials" in a community custody condition prohibiting the possession or access of such materials is vague is an issue of first impression.

There are three overarching instances when a court will declare a legal provision, such as a community custody condition, unconstitutionally vague. First,

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the statute must "give the person of ordinary intelligence a reasonable opportunity to know what [behavior] is prohibited." *Grayned*, 408 U.S. at 108. Second, the law must provide explicit standards to those charged with enforcing the law in order to prevent "arbitrary and discriminatory" application. *Id.* Finally, a vague law that encroaches on "'sensitive areas of basic First Amendment freedoms'" naturally inhibits the exercise of those freedoms because individuals who are uncertain of the meaning of a statute will steer "'far wider'" than necessary in order to ensure compliance. *Id.* at 109 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964)).

To determine whether a legal provision, such as a community custody condition, is unconstitutionally vague, we apply a two-pronged analysis. We must first consider whether the challenged language "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (plurality opinion). Next, the language will be void if it "may authorize and even encourage arbitrary and discriminatory enforcement." *Id.* at 56 (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)). A provision is not vague when a person "'exercising ordinary common sense can sufficiently understand'" it. *Gibson v. City of Auburn*, 50 Wn. App. 661, 667, 748 P.2d 673 (1988) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S. Ct. 1633, 40

L. Ed. 2d 15 (1974), *overruled in part on other grounds by Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)); *see also Coates v. Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971) (holding that a statute is impermissibly vague when it prohibits "[c]onduct that annoys some people [but] does not annoy others"). But a statute will be considered unconstitutionally vague if enforcement depends on a completely subjective standard. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) ("The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment.").

The State argues that the condition in question here is not unconstitutionally vague because the term "pornographic materials" was defined in a manner that may be reasonably understood by an ordinary person. The existence of a definition distinguishes Padilla's condition from the condition this court struck down in *Bahl*. As mentioned previously, in *Bahl* we determined that because Bahl's condition did not include a definition of "pornography" or rely on any statutory definition of the term, the language did not adequately put Bahl on notice of what specific items he was prohibited from accessing and encouraged arbitrary enforcement. 164 Wn.2d at 754-57. Thus, the condition was deemed unconstitutionally vague.

9

In this case, unlike *Bahl*, the sentencing court provided a definition for the term "pornographic materials." Yet, Padilla contends that the definition is also vague as it does not sufficiently put him, as the probationer, on notice of what specific items he is prohibited from accessing. The presence of a vague definition does not save the condition from a vagueness challenge if it also encompasses a broad range of speech protected by the First Amendment. *Id.* at 756 (CCO could interpret the condition to "include any nude depiction" as including "a photograph of Michelangelo's sculpture of David." (citing *States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002)). The vagueness doctrine requires the State to provide citizens with fair warning of proscribed conduct; thus, the overbroad definition of "pornographic materials" may similarly cause a "chilling effect on the exercise of sensitive First Amendment freedoms." *Id.* at 752-53. When First Amendment speech is prohibited, "a stricter standard of definiteness applies." *Id.*; *State v. K.H.-H.*, 185 Wn.2d 745, 750-54, 374 P.3d 1141 (2016) (acknowledging more specificity is required when vague conditions implicate First Amendment rights). Accordingly, the inclusion of a vague definition cannot save the condition from being unconstitutionally vague.

Padilla contends the "pornographic materials" definition is unconstitutionally vague. The condition defines "pornographic materials" as "images of sexual intercourse, simulated or real, masturbation, or the display of

10

*State v. Padilla*, No. 94605-1

intimate body parts." CP at 37. Padilla notes that the prohibition against viewing depictions of simulated sex would unnecessarily encompass movies and television shows not created for the sole purpose of sexual gratification. Films such as *Titanic* and television shows such as *Game of Thrones* depict acts of simulated intercourse, but would not ordinarily be considered "pornographic material." We agree. The prohibition against viewing depictions of intimate body parts impermissibly extends to a variety of works of arts, books, advertisements, movies, and television shows. *See Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S. Ct. 2750, 41 L. Ed. 2d 642 (1974) (the depiction of "nudity alone is not enough to make material legally obscene").

On its face, the plain language of the pornography condition and its relevant definition is ambiguous. In application, the definition does not provide adequate notice of what behaviors Padilla is prohibited from committing and also encompasses the prohibition of constitutionally protected speech. But also, delegating the authority to determine the prohibition boundaries to an individual CCO creates "'a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating.'" *Bahl*, 164 Wn.2d at 755 (internal quotation marks omitted) (quoting *Guagliardo*, 278 F.3d at 872). For example, in *Farrell v. Burke*, the parole officer stated he would have "'locked [the parolee] up for'" possessing a photograph of the statue of

11

*State v. Padilla*, No. 94605-1

David pursuant to a condition prohibiting the possession of pornography. 449 F.3d 470, 479 (2d Cir. 2006). There, the defendant was similarly prohibited from possessing pornographic material. *Id.* at 476. While the *Farrell* court determined that the term "pornographic material" was inherently vague, it refused to strike down the condition as being void for vagueness because, as applied, the material possessed "fit[ ] within any reasonable understanding of the term" "pornography." *Id.* at 490. In the present case, Padilla's sentencing condition and its definition similarly fails to adequately put him on notice of which materials are prohibited and leaves him vulnerable to arbitrary enforcement. Therefore, the condition is unconstitutionally vague.

2.  <u>We reverse the Court of Appeals' decision upholding the condition and remand to the trial court for further definition of the term "pornographic materials" following a determination of whether the restriction is narrowly tailored based on Padilla's conviction</u>

In light of the considerations discussed above, on remand the trial court must first determine whether the condition is sufficiently crime-related. As a condition of community custody, sentencing courts may order offenders to "[c]omply with any crime-related prohibitions." RCW 9.94A.703(3)(f). A crime-related prohibition must directly relate to the circumstances of the crime for which the offender was convicted. RCW 9.94A.030(10). If necessary, the sentencing court may restrict the material an offender may access or possess, but such a restrictive condition "must be reasonably necessary to accomplish essential state needs and

12

*State v. Padilla*, No. 94605-1

public order." *Bahl*, 164 Wn.2d at 758. And when the regulation implicates First Amendment speech, it must be narrowly tailored to further the State's legitimate interest. *Grayned*, 408 U.S. at 117.

To resolve crime-relatedness issues, a court will review the factual basis for the condition under a "'substantial evidence'" standard. *Irwin*, 191 Wn. App. at 656 (quoting *State v. Motter*, 139 Wn. App. 797, 801, 162 P.3d 1190 (2007)). The court will strike the challenged condition if there is no evidence in the record linking the circumstances of the crime to the condition. *Id*. at 656-57. There is no requirement that the condition be factually identical to the crime. *Id*. If there is a reasonable basis for the condition, the court will uphold it. *Id*. at 657.

At oral argument, the State agreed with Padilla that the present record is inadequate to determine whether the pornography prohibition is sufficiently crime related. Wash. State Supreme Court oral argument, *State v. Padilla*, No. 94605-1 (Mar. 20, 2018),[5] at 24 min., 44 sec. to 24 min., 51 sec. (no showing of compelling state interest), 24 min, 56 sec. to 25 min., 3 sec. (no showing all pornographic material should be restricted), 34 min., 42 sec. to 35 min., 13 sec. ("I doubt that this record is sufficient even to cover the narrowest part of this, i.e., the depiction of—depictions of sexual intercourse. I doubt that even that is justified on this

---

[5] Washington State's Public Affairs Network, http://www.tvw.org.

13

record where the sentencing record in this case doesn't provide any real link between pornography, however defined, and this defendant's offense pattern or the commission of this crime because the court just didn't have that kind of information."). Based on the record before us, the condition is not reasonably necessary to accomplish the essential needs of the state and public order.

Since the contested condition implicates a First Amendment right, it must be reasonably necessary to accomplish the essential needs of the state and public order. *Bahl*, 164 Wn.2d at 757 (quoting *Riley*, 121 Wn.2d at 37). Padilla was convicted of communicating with a minor for immoral purposes, but is prohibited from accessing all pornography with no distinction between child and adult pornography. *See United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001) ("[r]estricting this entire range of material is simple unnecessary to protect the public, and for this reason the condition is not 'narrowly tailored.'"). Meanwhile, the included definition of the term "pornographic materials" encompasses a broad range of protected materials. There is currently no connection in the record between Padilla's inappropriate messaging and imagery of adult nudity or simulated intercourse. *See State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008) (striking community custody condition prohibiting offender's access to the Internet because there was "no evidence" Internet usage contributed in any way to the crime of rape); *Riley*, 121 Wn.2d at 36-38 (condition prohibiting offender from

14

*State v. Padilla*, No. 94605-1

owning a computer, associating with other computer hackers, or communicating on online bulletin boards following conviction for computer trespass upheld). The condition in question is unconstitutionally vague.

Therefore, we reverse the Court of Appeals' decision upholding the condition and remand to the trial court for further definition of the term "pornographic materials" following a determination of whether the restriction is narrowly tailored based on Padilla's conviction.

CONCLUSION

A vague definition cannot save the condition from a vagueness challenge. *Bahl*, 164 Wn.2d at 756. Here, Padilla's community custody condition prohibiting access to and possession of pornographic materials is unconstitutionally vague because the condition fails to define the scope of those prohibited materials. Therefore, we reverse the Court of Appeals' decision upholding the condition and remand to the trial court to adopt a clear definition and consider whether the restriction of "pornographic materials" is narrowly tailored based on the crime and the defendant.

Gonzáles, J.

WE CONCUR:

| | |
|---|---|
| Fairhurst, C.J. | Stephens, J. |
| Johnson, J. | Wiggins, J. |
| Madsen, J. | Geoh McCul, J. |
| Owens, J. | Yu, J. |