IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38625-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSEPH E. PREBLE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Joseph Preble appeals various community custody conditions imposed by the trial court. We affirm in part and reverse in part.

FACTS

In 2015, Joseph Preble pleaded guilty to rape of a child in the second degree and tampering with a witness. His judgment and sentence included numerous conditions with which he was ordered to comply once he was released and placed in community custody.

In 2021, Mr. Preble filed a CrR 7.8 motion to modify his judgment and sentence, in which he challenged five conditions. At the hearing, the State agreed that four of the five conditions should be modified, and had earlier provided the court and Mr. Preble

with a proposed order. Mr. Preble objected to the modifications listed in the proposed

order.

The court heard from the parties and additionally heard from a community

corrections officer (CCO). At the conclusion of the hearing, the trial court ruled it would

sign the State's proposed order.

After the trial court entered its order, the conditions challenged on appeal now

read:

> **OTHER CONDITIONS**: Defendant shall comply with the following other
> conditions during the term of community placement / custody:
> . . . .
> 5.) Shall not engage in/form romantic, intimate or other relationships
> with persons having care, custody or control of minor children without prior
> permission from CCO and therapist.
> 6.) Shall not possess/utilize a smartphone or other internet-capable
> device without prior permission from CCO. You may not own/use/possess
> an internet capable device without first meeting with your CCO and fully
> and accurately completing the "Social Media and Electronic Device
> Monitoring Agreement" DOC Form # 11-080. You must install a
> monitoring program, at your own expense, and your CCO must be your
> designated accountability partner. The requirements and prohibitions on
> this completed form will remain in effect until removed or modified in
> writing, signed and dated by you and your CCO.
> 7.) Shall not access the Internet without first installing a monitoring
> program on the device used to access the internet, and your CCO must be
> your designated accountability partner.
> 8.) Shall not access social media without first installing a monitoring
> program on the device used to access the social media site, and your CCO
> must be your designated accountability partner.

2

9.) You must not possess or access sexually explicit materials that are intended for sexual gratification. This includes, but is not limited to, material which shows genitalia, bodily excretory behavior that appears to be sexual in nature, physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality, or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of human genitals. Works of art or of anthropological significance are not considered sexually explicit material.

. . . .

13.) Shall submit to [urinalysis] testing as directed by CCO.

Clerk's Papers (CP) at 70-71, as modified by CP at 73.

Mr. Preble timely appealed.

ANALYSIS

We review community custody conditions for an abuse of discretion, but a trial court necessarily abuses its discretion when it imposes an unconstitutional condition. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). A trial court must impose certain enumerated conditions of community custody and has discretion to impose other conditions. RCW 9.94A.703(1)-(3). In addition to enumerated conditions, the court may craft crime-related prohibitions, which are "order[s] of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10); *see* RCW 9.94A.703(3)(f). With these standards in mind, we now review the challenged conditions.

CONDITION 5: ROMANTIC, INTIMATE, AND OTHER RELATIONSHIPS

Although not raised by Mr. Preble, the State contends the restriction on forming romantic, intimate, or other relationships is unconstitutionally vague. We agree.

We have previously held that the phrase "romantic relationships" is unconstitutionally vague. *State v. Peters*, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019). "Other relationships" similarly does not give an ordinary person sufficient notice of the proscribed conduct. The restrictions on "romantic" and "other" should be struck from condition 5.

CONDITION 6: POSSESSION AND USE OF INTERNET-CAPABLE DEVICES

Mr. Preble contends the first sentence of condition 6, regarding his use of Internet-capable devices, is overbroad and vague. We agree.

Where a community custody condition implicates fundamental constitutional rights, the condition must be "reasonably necessary to accomplish the essential needs of the state and public order." *Padilla*, 190 Wn.2d at 684. We generally apply principles of statutory interpretation to interpreting legal standards such as conditions of community custody. *See State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). Because a community custody condition is not enacted by the legislature, however, we do not begin with a presumption the condition is constitutionally valid. *Id.*

4

A condition is constitutionally overbroad if it "is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 67, 469 P.3d 322 (2020) (citing *Blondheim v. State*, 84 Wn.2d 874, 878, 529 P.2d 1096 (1975)). A condition "is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677. If a person of ordinary intelligence can understand what the law proscribes, it is not vague even if there are possible areas of disagreement. *Bahl*, 164 Wn.2d at 754.

Restrictions on Internet access implicate the First Amendment to the United States Constitution. *Packingham v. North Carolina*, 582 U.S. 98, 137 S. Ct. 1730, 1735-36, 198 L. Ed. 2d 273 (2017). We have held that blanket prohibitions on using the Internet or Internet-capable devices are impermissibly broad, even where the defendant used the Internet to commit a sex offense. *Sickels*, 14 Wn. App. 2d at 73. Conditions that require the installation of monitoring programs or the use of filters to restrict Internet access, however, are not constitutionally overbroad in that context. *See*, *e.g.*, *State v. Frederick*,

20 Wn. App. 2d 890, 905, 506 P.3d 690 (2022) (monitoring program); *State v. Johnson*, 197 Wn.2d 740, 746-47, 487 P.3d 893 (2021) (preapproved filters).

The State contends that the first sentence of condition 6 is not overbroad because, when read in context, the sentence simply means that Mr. Preble is required to obtain initial permission for Internet use and install monitoring software on his devices, not obtain permission each time he uses an Internet-capable device. Br. of Resp't at 15. If this were the case, however, the first sentence of condition 6 would be entirely superfluous.

Washington courts observe the rule against surplusage, which requires us to avoid interpretations of a condition that would render superfluous another provision. *Veit v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 113, 249 P.3d 607 (2011). Thus, any interpretation of the first sentence of condition 6 must give it a meaning that is distinct from that expressed by the remainder of the condition. We cannot reasonably do so without giving the sentence the meaning Mr. Preble asserts: that in addition to obtaining initial permission from his CCO, signing a form, and installing monitoring software, Mr. Preble may not utilize an Internet-capable device at any time without obtaining permission from his CCO.

Similarly, the first sentence is unconstitutionally vague even in context. Mr. Preble contends the condition is open to arbitrary enforcement, and we agree. Regardless of the parties' intent, the first sentence of condition 6, on its face, prohibits any Internet device use without permission. An overzealous CCO could enforce this provision literally and penalize Mr. Preble for using Internet-capable devices without permission even after he initially meets with the CCO, signs the appropriate form, and installs monitoring software. This is not a question of context providing meaningful benchmarks because, as discussed above, the first sentence of the condition must be read to allow for such a broad prohibition. The condition is open to arbitrary enforcement and is therefore unconstitutionally vague.

The first sentence of condition 6 is unnecessary to give condition 6 the meaning the State asserts. Either it is surplusage or constitutionally overbroad and vague. Because we do not give the condition a presumption of constitutional validity as we would with a statute, we conclude that the first sentence of condition 6 is unconstitutional and must be struck.

CONDITION 9: SEXUALLY EXPLICIT MATERIALS

Mr. Preble contends the limitation on accessing sexually explicit material is not crime related and is unconstitutionally overbroad and vague. We disagree.

*Crime relatedness*

Mr. Preble asserts there is no factual connection between his criminal activity and sexually explicit imagery of adults. Our Supreme Court, however, has held that a prohibition on sexually explicit materials in general is reasonably related to the crimes of child rape and molestation, observing that by committing sex crimes, the defendant "established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 686, 425 P.3d 847 (2018). By raping a child, Mr. Preble similarly demonstrated he cannot control his sexual urges.

Mr. Preble asserts that there was "not a hint of sexually explicit materials involved" in the communications between him and the child victim, arguing that under *Padilla*, the prohibition is not crime related because there is not substantial evidence in the record linking the circumstances of Mr. Preble's crime to the prohibition on sexually explicit material. Br. of Appellant at 25. Contrary to his assertion, however, sexually

8

explicit materials were a significant part of the communications between Mr. Preble and

the victim preceding the rape with which Mr. Preble was convicted. The record shows

Mr. Preble used live images of his victim, a 13-year-old girl, for sexual stimulation while

video chatting, and captured still images from their video chats, presumably also for

sexual stimulation. Sexually explicit videos and images were part of the circumstances of

Mr. Preble's crime of conviction. This is unlike *Padilla*, in which the State conceded that

the record did not show a connection between sexually explicit material and the

defendant's offense pattern. 190 Wn.2d at 683. Condition 9 is crime related.

### *Overbreadth*

Mr. Preble contends the limitation on accessing sexually explicit material is

overbroad, but relies on case law discussing restrictions on pornography. *See Bahl*,

164 Wn.2d 739; *United States v. Loy*, 237 F.3d 251 (3d Cir. 2001). Mr. Preble's

condition of community custody, however, does not restrict pornography, but rather

"sexually explicit materials that are intended for sexual gratification." CP at 73. He

asserts, with no discussion, that the condition "sweeps up so much protected material that

it fails to meet any narrow tailoring that could reasonably relate to Mr. Preble's crime."

Br. of Appellant at 32.

9

To the contrary, as recognized in *Hai Minh Nguyen*, sexually explicit materials "may trigger the defendant to reoffend or, perhaps, commit another sex crime," because their purpose is sexual stimulation. 191 Wn.2d at 685. And in *Loy*, cited by Mr. Preble, the Third Circuit similarly recognized that for persons convicted of sex crimes, "almost any restriction upon sexually explicit material may well aid in rehabilitation and protection of the public." 237 F.3d at 266. As discussed above, Mr. Preble has demonstrated by raping a child that he cannot control his sexual urges, and a condition that prohibits his use of sexually stimulating material, while preserving his access to other material protected by the First Amendment, is narrowly tailored to the State's goals of protecting the public and rehabilitating Mr. Preble. Condition 9 is not overbroad.

### *Vagueness*

Mr. Preble contends the limitation on accessing sexually explicit material is unconstitutionally vague. Again, however, our Supreme Court has spoken on this issue in *Hai Minh Nguyen*, holding "that the term 'sexually explicit material' is not unconstitutionally vague." 191 Wn.2d at 681. Mr. Preble distinguishes *Hai Minh Nguyen*, arguing that because his condition is not limited to material in the statutory definition of "sexually explicit material" in RCW 9.68.130(2), it is unconstitutionally vague. While the court in *Hai Minh Nguyen* looked to statutory definitions to bolster its

10

conclusion that "sexually explicit material" was not unconstitutionally vague, its analysis did not turn on that fact, and it found the phrase was not vague independent of the statutory language. *Id.* at 680. A person of ordinary intelligence understands what sexually explicit material is. Condition 9 is not unconstitutionally vague.

CONDITION 13: URINALYSIS TESTING

Mr. Preble contends the trial court erred in refusing to strike condition 13, requiring random urinalysis testing because it is not crime related, narrowly tailored, or reasonably necessary. We disagree.

Mr. Preble relies on *State v. Olsen*, 189 Wn.2d 118, 399 P.3d 1141 (2017), to assert that "where alcohol or drugs played no role in the underlying offense, the trial court may not enforce these abstention conditions through [urinalysis] testing." Br. of Appellant at 13. In *Olsen*, our Supreme Court considered whether a requirement that driving under the influence probationers submit to random urinalysis testing violated their privacy interests under article I, section 7 of our state constitution. *Id.* at 120. It held that the urinalysis implicated a probationer's reduced privacy interest but did not violate article I, section 7, because the random testing was conducted with authority of law. *Id*. at 126. It found that the State had a compelling interest in disturbing the probationer's privacy interest "to promote her rehabilitation and protect the public." *Id.* It further

11

found that the random testing was narrowly tailored to monitor compliance with a validly imposed probation condition. *Id.* It noted that the State generally had a compelling interest in "closely monitoring probationers in order to promote their rehabilitation," but also had a duty to protect the public from alcohol-impaired drivers. *Id.* at 128-29. Random urinalysis was "a crucial monitoring tool that is limited in scope when imposed only to assess compliance with a valid prohibition on drug and alcohol use." *Id.* at 130.

*Olsen* does not answer the question of whether random urinalysis testing is constitutionally permissible for a sex offense probationer whose crime of conviction did not involve controlled substance use, but who is validly prohibited from illegally using controlled substances as a condition of community custody. While the *Olsen* court set forth a framework for analyzing whether the condition is valid, Mr. Preble does not engage in that analysis in his brief. We will not decide an issue in the absence of meaningful argument and therefore decline to address whether the requirement that Mr. Preble submit to random urinalysis is narrowly tailored to serve a compelling government interest. *See Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 169, 876 P.2d 435 (1994) (an appellate court will not review constitutional arguments supported by inadequate briefing).

No. 38625-2-III
*State v. Preble*

In the absence of a constitutional limitation to the contrary, the trial court had statutory authority to impose the condition. The Department of Corrections may require "affirmative acts necessary to monitor compliance with the order of a court" such as random urinalysis. RCW 9.94A.030(10). Mr. Preble is court ordered to refrain from consuming controlled substances without a lawful prescription, a condition that he does not challenge. *See* RCW 9.94A.030(2)(c); CP at 70. Random urinalysis testing is therefore a statutorily valid condition to monitor his compliance with the prohibition on illegal controlled substance use. *See State v. Vant*, 145 Wn. App. 592, 604, 186 P.3d 1149 (2008).

## CONCLUSION

We affirm in part, reverse in part, and remand for the trial court to enter a second amended order consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Fearing, J.

Staab, J.

13